IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THOMAS MOWER,<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br>IDEAL HEALTH INC., a Nevada corporation, TTN, LLC DBA THE TRUMP NETWORK, a Massachusetts limited liability company, TODD STANWOOD, SCOTT STANWOOD, and LOUIS DECAPRIO,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION TO STRIKE<br><br><br>Case No. 2:12-CV-230 TS<br><br><br><br><br><br>Judge Ted Stewart |

This matter is before the Court on Defendants Ideal Health, Inc.; TTN, LLC dba The Trump Network; Todd Stanwood; Scott Stanwood; and Louis DeCaprio's Motion to Dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and Plaintiff Thomas Mower's Motion to Strike Defendants Ideal Health, Inc. and TTN, LLC dba The Trump Network's Motion to Dismiss and to further enter default judgment against these same Defendants pursuant to Fed. R. Civ. P. 55(b)(2).  For the reasons stated below, the Court will deny Defendants' Motion to Dismiss and will grant Plaintiff's Motion to Strike the Motion to Dismiss, but the Court will not enter default judgment at this time.

1

I. BACKGROUND

Defendants Ideal Health Inc. ("Ideal Health"), TTN, LLC dba The Trump Network ("TTN"), Todd Stanwood ("T. Stanwood"), Scott Stanwood ("S. Stanwood"), and Louis DeCaprio ("DeCaprio") (together "Defendants") move to dismiss Plaintiff Thomas Mower's ("Mower") claims against them for lack of personal jurisdiction.[1] Mower moves to strike the Motion to Dismiss of Defendants Ideal Health and TTN and requests that the Court enter default judgment for Defendants' failure to appropriately answer Mower's First Amended Complaint.[2]

Ideal Health is, and at all times relevant hereto was, a Nevada corporation doing business across the United States with its principle place of business in Massachusetts.[3] TTN is, and at all times relevant hereto was, a Massachusetts limited liability company and Ideal Health's sister company and alter ego doing business throughout the United States with its principle place of business in Massachusetts.[4] The two companies are under common ownership and control.[5] DeCaprio is, and at all times relevant hereto was, President of Ideal Health and TTN with S. Stanwood as Secretary and T. Stanwood as Chief Executive Officer.[6] Each individual Defendant resides in Massachusetts.[7] The two companies have distributors throughout the United States,

---

[1] Docket No. 2, at 2; Docket No. 3, at 12.

[2] Docket No. 12, at 1-2; Docket No. 13, at 1-2.

[3] Docket No. 1-1, at 2; Docket No. 2, at 1.

[4] Docket No. 1-1, at 2; Docket No. 2, at 1; Docket No. 14, at 3.

[5] Docket No. 14, at 3.

[6] Docket No. 8, at 1; Docket No. 9, at 1; Docket No. 10, at 1.

[7] Docket No. 8, at 1; Docket No. 9, at 1; Docket No. 10, at 1.

including several in Utah.[8] They have encouraged these distributors to market business to other distributors within Utah, and in response to this encouragement, the distributors have advertised and solicited business in Utah.[9]

In October of 2011, Mower, a resident of Utah, entered into an agreement to lend Ideal Health/TTN $270,000 so that the companies could pay commissions to distributors.[10] Mower did this with the hopes of acquiring the companies, and as part of negotiations Mower and Defendants discussed moving headquarters to Utah.[11] Also as part of the agreement, DeCaprio, T. Stanwood, and S. Stanwood guaranteed repayment of the loan out of their personal assets.[12] Defendants did not travel to Utah during negotiations,[13] and Mower negotiated with them via email and telephone from his office in Springville, Utah.[14] The funds were transferred from Mower's Utah bank account to Defendants' Massachusetts bank account on November 1, 2011, and it was agreed that the money would be paid back through tri-weekly transfers into Mower's Utah bank account.[15] Defendants agreed to repay any outstanding amounts by November 30, 2011.[16]

---

[8] Docket No. 14, at 6.

[9] *Id.*

[10] Docket No. 1-1, at 2.

[11] Docket No. 14, at 5.

[12] Docket No. 1-1, at 5.

[13] Docket No. 2, at 3.

[14] Docket No. 14, at 5.

[15] Docket No. 1-1, at 5; Docket No. 14, at 4-5.

[16] *Id.* at 4.

On January 23, 2012, Mower filed his first claim in Utah after Defendants made only one payment and failed to pay the rest of the amount due in the time agreed upon.[17] The First Amended Complaint asserts causes of action against Defendants for breach of contract, unjust enrichment, fraud, and negligence.[18] Mower included the individuals DeCaprio, S. Stanwood, and T. Stanwood as Defendants along with Ideal Health and TTN, and claimed that in doing the acts alleged in the complaint the individual Defendants were "acting within the course and scope" of their work duties as officers of Ideal Health and TTN.[19] In Defendants' Answer, filed on March 1, 2012, they denied consenting to jurisdiction and filed a Motion to Dismiss for lack of personal jurisdiction.[20] On March 14, 2012, Mower moved to strike Defendants Ideal Health and TTN's Motion to Dismiss and requested a default judgment, because DeCaprio, who is not an attorney, represented Ideal Health and TTN and filed an improper Answer.[21]

## II. DISCUSSION

A.  MOTION TO STRIKE

Although a natural person may represent himself in a court of law,[22] it has long been the standard in the Tenth Circuit "that a corporation can appear in a court of record only by an

---

[17] Docket No. 1-1, at 5.

[18] Docket. No. 13, at 2.

[19] Docket. No. 14, at 3.

[20] Docket No. 2, at 1.

[21] Docket No. 12, at 1-2; Docket No. 13, at 1-2.

[22] *Osborn v. Bank of U.S.*, 22 U.S. 738, 829 (1824).

attorney at law."[23]  Even an officer of the corporation may not perform any "substantive legal work" *pro se* on behalf of the corporation if he is a non-attorney.[24]

In the present case, DeCaprio filed the Motion to Dismiss on behalf of the corporations Ideal Health and TTN.  Because DeCaprio is not an attorney he may not represent these corporations.  Therefore, the Court will grant Plaintiff's Motion to Strike the Motion to Dismiss filed by Defendants Ideal Health and TTN.  This same reasoning does not apply to Defendants T. Stanwood, S. Stanwood, and DeCaprio because they are natural persons, and they have each signed the Motion to Dismiss on their own behalf.  The Court will not strike the Motions to Dismiss filed by these Defendants.

B.   DEFAULT JUDGEMENT

Under Fed. R. Civ. P. 55(a), the clerk of the court must enter a default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ."  In determining whether to enter default judgment the court may consider several factors that the Tenth Circuit has used to determine whether a judge should dismiss a case as a sanction against a party.  These factors include:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[25]

In the present case, because DeCaprio is unable to represent Ideal Health and TTN *pro se*, the Answer to Mower's First Amended Complaint has no effect, and the court may enter default judgment against Ideal Health and TTN for failure to answer.  The Court, however, will

---

[23] *Flora Const. Co. v. Fireman's Fund Ins. Co.*, 307 F.2d 413, 414 (10th Cir. 1962).

[24] *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001).

[25] *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

decline to do so, because Defendants Ideal Health and TTN have not been adequately warned of their mistake and the possible consequences of such a mistake. They have not been given time to correct their actions, and the prejudice against Defendants in this case would be substantial. Further, there is no evidence that Defendants Ideal Health and TTN are culpable of any malfeasance. Therefore, in order to ensure that this case is decided on its merits, the Court will give Defendants Ideal Health and TTN 21 days to acquire legal counsel and to file a response.[26] If these Defendants do not acquire legal counsel and file an appropriate response within this time, default judgment may be entered against them.

C.   MOTION TO DISMISS

Because DeCaprio filed the Motion to Dismiss for Lack of Personal Jurisdiction on behalf of Ideal Health and TTN as a *pro se* representative, that challenge will be set aside until the corporations obtain adequate legal representation. However, the Motion to Dismiss on behalf of defendants T. Stanwood, S. Stanwood, and DeCaprio still stands.

Because these individual Defendants have certain minimum contacts with the State of Utah dealing with the contract in dispute in the current case, the Court rules that it has specific jurisdiction over them.

*1. Standard of Review*

The plaintiff has the burden of establishing personal jurisdiction over the defendant in a diversity suit,[27] and must either establish that the court has general jurisdiction over the defendant, meaning that the court has jurisdiction over the defendant in all cases brought before

---

[26] *See, e.g.*, *In re K. M. A., Inc.*, 652 F.2d 398, 399 (5th Cir. 1981) (ruling that a corporation appearing *pro se* had 30 days to obtain an attorney before a dismissal would be granted).

[27] *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).

it, or must establish that the court has specific jurisdiction over the defendant, meaning the defendant can only be haled to court on claims arising out of its activities in the forum state.[28] In order to establish specific jurisdiction the plaintiff must 1) show that jurisdiction is appropriate under the long-arm statute of the forum state, and 2) show that exercising jurisdiction "does not offend the due process clause of the Fourteenth Amendment."[29]

> The Long-Arm Statute of Utah states:
>
> [A]ny person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to: (1) the transaction of any business within this state . . . .[30]

This Long-Arm Statute has been interpreted by Utah courts to have broad application. Courts have frequently assumed application of the statute because the "legislature has directed [the courts] to construe it 'so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'"[31]

In order to satisfy the due process requirement when the evidence presented in the Motion to Dismiss "consists of affidavits and other written materials," the plaintiff only needs to make a prima facie showing that the court may exercise jurisdiction over the defendant.[32] The

---

[28] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998).

[29] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[30] UTAH CODE ANN. § 78B-3-205.

[31] *Gardner v. SPX Corp.*, 272 P.3d 175, 179 (Utah App. 2012) (quoting *Anderson v. Am. Socy. of Plastic and Reconstructive Surgeons*, 807 P.2d 825, 827 (Utah 1990)).

[32] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

allegations made in the complaint must be taken as true so long as they are uncontroverted by the defendant's affidavits, and all factual disputes presented by conflicting affidavits must be resolved in favor of the plaintiff.[33]  In order for the Court to have jurisdiction over the defendant without offending the due process clause of the Fourteenth Amendment the defendant must consent to jurisdiction,[34] or the plaintiff must show that the defendant A) had "minimum contacts" with the forum state and B) that exercising jurisdiction over the defendant would "not offend traditional notions of fair play and substantial justice . . . ."[35]

The plaintiff can show that the defendant has minimum contacts in a forum state if the defendant purposefully directs "his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[36]  The plaintiff must show "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[37]  These acts must form a substantial connection with the forum state so that the defendant "should reasonably anticipate being haled to court there." [38]  This does not mean that the defendant must

---

[33] *Behagen*, 744 F.2d at 733.

[34] *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982).

[35] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unempl. Compen. and Placement*, 326 U.S. 310, 313 (1945)).

[36] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)).

[37] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[38] *World-Wide Volkswagen,* 444 U.S. at 297; *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987).

physically enter the forum state, but rather, the defendant may be subject to specific jurisdiction if it purposefully directs business via "mail and wire communications across state lines."[39]

A corporate shield exception to the minimum contact standard may insulate officers of a corporation from personal jurisdiction "[w]here the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity . . . ."[40] This shield is based on the rationale that officers of a corporation cannot be held personally liable for the wrongful acts of the corporation.[41] However, just as officers can "incur personal liability by participating in the wrongful activity" of the corporation, officers are not insulated from personal jurisdiction when they participate in the wrongful activity.[42]

In light of the contacts the defendant has with the forum state, the court evaluates the reasonableness of jurisdiction by determining whether the exercise of jurisdiction would offend the traditional notions of fair play and substantial justice. In order to make this evaluation, the court considers several factors, including:

> "[T]he burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."[43]

---

[39] *Burger King*, 471 U.S. at 476.

[40] *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987).

[41] *ClearOne Commc'n, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011).

[42] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009).

[43] *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen,* 444 U.S. at 292).

These considerations may boost the plaintiff's case by establishing "the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."[44] On the other hand, a consideration of these factors may defeat the reasonableness of jurisdiction "even if the defendant has purposefully engaged in forum activities."[45]  When a defendant directs activities at a resident of the forum state, however, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[46]

  2. *Analysis*

In the present case it must be determined whether the Court may exercise general or specific jurisdiction over Defendants T. Stanwood, S. Stanwood, and DeCaprio.  This case deals with an alleged breach of contract in the repayment of a $270,000 loan.  The interaction between Plaintiff and these individual Defendants in creating and executing the aforementioned contract is the basis of the alleged minimum contacts Defendants have with the state of Utah.  Because Plaintiff's claims arise out of the activity of Defendants in the State of Utah, a specific jurisdiction analysis is appropriate here.

Since the individual Defendants have not consented to jurisdiction within Utah, the due process clause of the Fourteenth Amendment can only be satisfied by showing that Defendants had some minimum contacts with Utah, and by showing that exercising jurisdiction would not offend traditional notions of fair play and substantial justice.

---

[44] *Id.*

[45] *Id.*

[46] *Id.*

The Court finds that Defendants have minimum contacts with Utah, because they have purposefully directed activities at Utah by contacting a Utah resident multiple times via telephone and email in order to form a contract to receive money from a Utah bank account and to repay money into a Utah bank account.  By moving money in and out of Utah, Defendants have availed themselves of the privilege of conducting business within Utah and have invoked the privileges and benefits of Utah law.  Even though these transactions were executed remotely and Defendants never physically entered the state, their directed actions via wire communication nonetheless invoked Utah law.

Further, Defendants have had a substantial enough connection with Utah that they could reasonably foresee being haled to court there.  Defendants' interaction with Mower is evidence of this connection.  They not only connected themselves to Utah via the contract with Mower, but also by placing distributors within the state.  A major reason Plaintiff agreed to lend Defendants money was because he wanted to obtain the companies, and discussions of moving headquarters to Utah were part of the negotiations.  All of these were indicators to Defendants of the possibility of being haled to court in Utah, and these activities form the substantial connection necessary to establish minimum contacts with the forum state.

The corporate shield does not insulate these individual Defendants from jurisdiction even though they were acting within the course and scope of their employment while making contacts with Utah.  Because these Defendants were personally involved in the negotiations with the loan, and because they guaranteed the repayment of the loan through personal assets, they participated in the alleged wrongful act of breaching the contract, and thus have established sufficient minimum contacts with the forum State.

Establishing jurisdiction over these Defendants does not offend traditional notions of fair play or substantial justice because the State of Utah has a high interest in adjudicating the dispute, and Plaintiff has a substantial interest in obtaining convenient and effective relief.

Utah has a strong interest in protecting the rights of its residents when they enter into agreements with non-residents in order to regulate the flow of business in and out of the State. Plaintiff has every reason to believe and act on the assumption that he would be protected by the laws of Utah when entering into negotiations with a non-resident from his office in Utah, and he should not be denied that protection merely because those negotiations took place via email and telephone rather than in person.  Enabling convenience in negotiations should not inhibit Plaintiff from obtaining convenient legal relief in Utah.  In this case, the interests of Utah and Plaintiff promote the reasonableness of haling Defendants to court in Utah even had there been a lesser showing of minimum contacts.

Moreover, since it is clear that Defendants purposefully directed their activities at a resident of Utah when they entered into a contract with Plaintiff wherein they would accept a $270,000 loan from him, the Court finds that adjudicating the case in Utah would not offend traditional notions of fair play and substantial justice.  Defendants here have not presented any additional considerations, let alone any compelling considerations, and have not shown why being haled to court in Utah would be unreasonable.  Therefore, because Defendants have sufficient minimum contacts with Utah, and because haling them to court in Utah would not offend traditional notions of fair play and substantial justice, the Court will deny the Motion to Dismiss on behalf of Defendants S. Stanwood, T. Stanwood, and DeCaprio.

### III. CONLUSION

It is therefore ORDERED that Plaintiff's Motion to Strike Defendants Ideal Health and TTN's Motion to Dismiss (Docket No. 12) is GRANTED. It is further

ORDERED that Defendants Ideal Health and TTN have 21 days to obtain legal counsel and file an appropriate response to Plaintiff's First Amended Complaint, the failure to do so may result in sanctions up to and including default judgment against them. It is further

ORDERED that Defendants T. Stanwood, S. Stanwood, and DeCaprio's Motion to Dismiss (Docket No. 2) is DENIED.

DATED  November 6, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge